1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

ALEX GALLEGOS,

8

    Plaintiff,

No.  1:16-CV-03002-RHW

9

    v.

10

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND ORDER OF
REMAND FOR FURTHER
PROCEEDINGS**

11
12

    Defendant.

13
14

       Before the Court are the parties' cross-motions for summary judgment, ECF

15

Nos. 15 & 17. Mr. Gallegos brings this action seeking judicial review, pursuant to

16

42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his

17

application for Supplemental Security Income under Title XVI of the Social

18

Security Act, 42 U.S.C §§ 1381-1383F.  After reviewing the administrative record

19

and briefs filed by the parties, the Court is now fully informed. For the reasons set

20

forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for additional proceedings consistent with this order.

## I.    Jurisdiction

Mr. Gallegos filed for Supplemental Security Income on March 23, 2010. AR 226.  His alleged onset date is May 4, 1988. *Id*. Mr. Gallegos' application was initially denied on December 29, 2010, AR 89-92, and on reconsideration on January 17, 2012, AR 98-104.

A hearing with Administrative Law Judge ("ALJ") Stephanie Martz occurred on April 8, 2014. AR 32-65. On May 14, 2014, the ALJ issued a decision finding Mr. Gallegos ineligible for disability benefits. AR 15-27.  The Appeals Council denied Mr. Gallegos' request for review on November 10, 2015, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Gallegos timely filed the present action challenging the denial of benefits, on January 8, 2016. ECF No. 3. Accordingly, Mr. Gallegos' claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

1    burden, the Commissioner must establish that (1) the claimant is capable of

2    performing other work; and (2) such work exists in "significant numbers in the

3    national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

4    676 F.3d 1203, 1206 (9th Cir. 2012).

5                                    **III.    Standard of Review**

6             A district court's review of a final decision of the Commissioner is governed

7    by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

8    Commissioner's decision will be disturbed "only if it is not supported by

9    substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

10   1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

11   a mere scintilla but less than a preponderance; it is such relevant evidence as a

12   reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

13   *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

14   1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

15   whether the Commissioner's findings are supported by substantial evidence, "a

16   reviewing court must consider the entire record as a whole and may not affirm

17   simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

18   *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

19   F.2d 498, 501 (9th Cir. 1989)).

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 5**

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

3    1992). If the evidence in the record "is susceptible to more than one rational

4    interpretation, [the court] must uphold the ALJ's findings if they are supported by

5    inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

6    1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

7    2002) (if the "evidence is susceptible to more than one rational interpretation, one

8    of which supports the ALJ's decision, the conclusion must be upheld"). Moreover,

9    a district court "may not reverse an ALJ's decision on account of an error that is

10   harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is

11   inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

12   The burden of showing that an error is harmful generally falls upon the party

13   appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

14                    **IV.    Statement of Facts**

15        The facts of the case are set forth in detail in the transcript of proceedings,

16   and only briefly summarized here. Mr. Gallegos was 25 years old at the time of his

17   hearing. AR 89. He attended high school through the ninth (AR 256) or tenth grade

18   (AR 40), and he has been unsuccessfully working to obtain his GED since 2009

19   (AR 373).

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 6**

The ALJ found that Mr. Gallegos suffers from cognitive disorder, attention deficit disorder, depressive disorder, anxiety disorder, alcohol abuse in sustained remission, and polysubstance abuse. AR 20. Mr. Gallegos has a history of using drugs and alcohol. AR 338-340, 393, 398.

## V.    The ALJ's Findings

The ALJ determined that Mr. Gallegos was not under a disability within the meaning of the Act from March 23, 2010, the date the application was filed. AR 18.

**At step one**, the ALJ found that Mr. Gallegos had not engaged in substantial gainful activity since March 23, 2010 (citing 20 C.F.R. § 416.971 *et seq*.). AR 20.

**At step two**, the ALJ found Mr. Gallegos had the following severe impairments: cognitive disorder, attention deficit disorder, depressive disorder, anxiety disorder (post-traumatic stress disorder/panic disorder), alcohol abuse in sustained remission, and polysubstance abuse (citing 20 C.F.R. § 416.920(c)). AR 20.

At **step three**, the ALJ found that Mr. Gallegos did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 20.

At **step four**, the ALJ found Mr. Gallegos had the residual functional capacity to perform a full range of work at all exertional levels with these non-

exertional limitations: (1) he can understand, remember, and carry out simple work instructions and tasks learned through demonstration; (2) he needs a routine and predictable work environment. AR 22.

At **step five**, the ALJ found that, in light of Mr. Gallegos' age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that he can perform including1 industrial cleaner, cleaner II, and laundry worker. AR 25-26.

## VI.    Issues for Review

Mr. Gallegos argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) not finding that Mr. Gallegos meets listing 12.05(C) at step three; (2) improperly rejecting a portion of the opinion of Mr. Gallegos' medical provider; and (3) improperly rejecting Mr. Gallegos' subjective complaints.

## VII.    Discussion

### A. The ALJ Did Not Err in Finding That Plaintiff Did Not Meet Listing 12.05(C).

#### a.  Legal Standard.

Plaintiff argues that he is presumptively disabled at step three because he meets or exceeds the criteria of Listing 12.05C. ECF No. 15 at 6.

1    A claimant is presumptively disabled and entitled to benefits if he or she

2    meets or equals a listed impairment. To meet a listed impairment, a disability

3    claimant must establish that his condition satisfies each element of the listed

4    impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*

5    *v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a

6    claimant must establish symptoms, signs, and laboratory findings at least equal in

7    severity and duration to each element of the most similar listed impairment.

8    *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

9    The structure of Listing 12.05C is "unique" in that it "allows a claimant to

10    be found per se disabled without having to demonstrate a disabling, or even severe,

11    level of mental functioning impairment," which sometimes leads to "curious

12    result[s]."   *Abel v. Colvin*, 2014 WL 868821, at *4 (W.D. Wash. 2014) (internal

13    citation and quotation marks omitted). "The structure of the listing for intellectual

14    disability (12.05) is different from that of the other mental disorders listings.

15    Listing 12.05 contains an introductory paragraph with the diagnostic description

16    for intellectual disability. It also contains four sets of criteria (paragraphs A

17    through D). If [a claimant's] impairment satisfies the diagnostic description in the

18    introductory paragraph and any one of the four sets of criteria, we will find that

19    [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

20

1    Thus, a claimant must meet the standard set forth in the introductory

2    paragraph and at least one of the four listed criteria. *Id*. 20 C.F.R. Pt 404, Subpt. P,

3    App. 1, Listing 12.05 reads, in relevant part:

4          Intellectual disability refers to significantly subaverage general
           intellectual functioning with deficits in adaptive functioning initially
5          manifested during the developmental period; i.e., the evidence
           demonstrates or supports onset of the impairment before age 22.
6          The required level of severity for this disorder is met when the
           requirements in A, B, C, or D, are satisfied . . .
7
           C. A valid verbal, performance, or full IQ of 60 through 70 and a
8          physical or other mental impairment imposing an additional and
           significant work-related limitation of function.
9
10   In sum, in order to be considered presumptively disabled under Listing

11   12.05(C) based on "intellectual disability," a claimant must present evidence of:

12   (1) "significantly subaverage general intellectual functioning with deficits in

13   adaptive functioning" which initially manifested before the age of 22 (i.e., "during

14   the developmental period"); (2) a "valid verbal, performance, or full scale IQ of 60

15   through 70"; and (3) "a physical or other mental impairment imposing an

16   additional and significant work-related limitation of function." 20 C.F.R. Part 404,

17   Subpart P, Appendix 1, § 12.05(C*); see Kennedy v. Colvin*, 738 F.3d 1172, 1174

18   (9th Cir.2013).

19   It is important to note that, at step three of the sequential evaluation process,

20   it is the claimant's burden to prove that his impairment meets or equals one of the

impairments listed in 20 C.F.R. § 404, Subpart P. *Oviatt v. Com'r of Soc. Sec.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 10**

1    *Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071,

2    1074–75 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005).

3         In the case at hand the ALJ does not contest the third prong of 12.05(C), that

4    Mr. Gallegos has additional severe mental impairments. An additional impairment

5    satisfies the third prong of Listing 12.05(C) if it meets the definition of a "severe"

6    impairment at step two—i.e., "its effect on a claimant's ability to perform basic

7    work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631,

8    633 & n. 3 (9th Cir.1987) (additional severe physical or mental impairment

9    "automatically satisfie[s] the more than slight or minimal effect standard" under

10   Listing 12.05(C)) (citations omitted); *see also* 20 C.F.R. Part 404, Subpart P,

11   Appendix 1, § 12.00(A) (for purposes of Listing 12.05(C) an additional

12   impairment "significantly limits [claimant's] physical or mental ability to do basic

13   work activities" if it "is a 'severe' impairment [ ], as defined in [20 C.F.R.] §§

14   404.1520(c) and 416.920(c)"). Here, the record indicates that Mr. Gallegos meets

15   the third prong, as the ALJ did indeed find additional severe impairments at step

16   two of the five-step sequential evaluation process. AR 20.

17        Instead, the ALJ found Mr. Gallegos does not meet Listing 12.05(C) because

18   he (1) does not have deficits in adaptive functioning and (2) he does not have a

19   valid IQ of 60 through 70. AR at 22. The Court must now examine whether the

20   ALJ's conclusion that Mr. Gallegos did not satisfy Listing 12.05(C) is supported by

1 substantial evidence and free from legal error. The Court concludes that it is for the

2 reasons set forth below.

3 ### b. Deficit in Adaptive Functions Prior to Age 22.

4 The first element of the listing at issue is whether or not Mr. Gallegos meets

5 the criteria set forth in the introductory paragraph; specifically, whether he had

6 "significantly subaverage general intellectual functioning with deficits in adaptive

7 functioning initially manifesting during the developmental period." 20 C.F.R. Pt

8 404, Subpt. P, App. 1, Listing 12.05(C).

9 To satisfy the introductory paragraph of Listing 12.05C a claimant must

10 demonstrate "significantly subaverage general intellectual functioning with deficits

11 in adaptive functioning initially manifested during the developmental period; i.e.,

12 the evidence demonstrates or supports onset before age 22." Listing 12.05C.

13 In this case, the ALJ did not contest that Mr. Gallegos met the required low

14 level of intellectual functioning prior to age 22. However, the ALJ concluded that

15 Mr. Gallegos' effective adaptive functioning precluded a diagnosis of intellectual

16 disability, and therefore he could not meet the listing. AR 22. Specifically, the ALJ

17 concluded that:

18 > "The claimant also has not provided evidence of deficits in adaptive
   > functioning prior to age 22. While the claimant's representative
19 > argued that the claimant's history of suspension and disruptive
   > behaviors demonstrated deficits in social functioning, the record does
   > not provide any information as to what the specific behaviors were.
20 > The claimant also presented no testimony or documentation regarding

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 12**

his social functioning or behavior during school. A history of suspensions and mere assertion of disruptive behavior does not necessarily show a deficit in adaptive functioning consistent with the requirements of the listing. AR 22.

A showing of early onset adaptive functioning deficits for purposes of Listing 12.05(C) may be made by a claimant by the use of relevant circumstantial evidence, such as difficulties with reading and writing, attendance of special education classes, and dropping out of high school prior to graduating. *Jones v. Colvin*, 149 F. Supp. 3d 1251, 1260–61 (D. Or. 2016)(claimant attended special education classes, was reading at the eighth grade level when she was 18 years old, did not have to complete any homework, was provided significant accommodation at high school but was only able to achieve a modified diploma, took numerous tries to pass her driver's license, and lives under the care of her parents); *see also McGrew v. Colvin*, 2015 WL 1393291, at *6 (D.Or. Mar. 25, 2015); *Pedro v. Astrue*, 849 F.Supp.2d at 1011–12; *Campbell v. Astrue*, 2011 WL 444783, at *17 (E.D.Cal. Feb. 8, 2011); *Payne v. Astrue*, 2010 WL 654319, at *11 (D.Ariz. Feb. 23, 2010); *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1054-55 (C.D.Cal. 2010).

The Diagnostic & Statistical Manual of Mental Disorders describes "deficits in adaptive functioning" to refer to a "failure to meet developmental and sociocultural standards for personal independence and social responsibility." American Psychiatric Association, Diagnostic and Statistical Manual of Mental

Disorders 33 (5th ed. 2013). They limit functioning in at least one activity of daily

life, including communication and social participation in school, work, or other

environments. *Id*.

Importantly, in the case at hand, the ALJ appropriately found that Mr.

Gallegos never attended special education classes. In fact, the record demonstrates

that Mr. Gallegos was "tested for Special Education in the past, however, did not

qualify for services." AR 22. While the non-attendance in special education classes

is not dispositive on this issue, it is important circumstantial evidence a court will

look to when determining deficits in adaptive functioning. *See Jones*, 149 F. Supp.

3d at 1260–61.[1] Additionally, the ALJ considered the contention by Mr. Gallegos'

counsel that Mr. Gallegos' school records for suspensions for fighting, disruptive

conduct, and the failing of most of his classes demonstrate deficits in adaptive

functioning. In rejecting the school records as sufficient evidence, the ALJ

correctly stated that these records do not provide any information as to what the

specific behaviors were. AR 22. These bare school disciplinary records alone are

---

[1] The Court has identified a number of cases finding or supporting a deficit in adaptive functioning, all of which found, as part of the courts' determination, that the claimants participated in special education classes. *See Sorter v. Astrue*, 389 F. App'x 620, 622 (9th Cir. 2010); *Oviatt v. Com'r of Soc. Sec. Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Christner v. Astrue*, 498 F.3d 790, 794 (8th Cir. 2007); *Jones*, 149 F. Supp. 3d 1251, 1260–61 (D. Or. 2016); *McGrew*, 2015 WL 1393291, at *6 (D.Or. Mar. 25, 2015); *Abel v. Colvin*, No. 12-CV-06025 JRC, 2014 WL 868821, at *4 (W.D. Wash. Mar. 5, 2014); *Pedro*, 849 F.Supp.2d at 1011–12; *Campbell*, 2011 WL 444783, at *17 (E.D.Cal. Feb. 8, 2011); *Payne*, 2010 WL 654319, at *11 (D.Ariz. Feb. 23, 2010); *Gomez*, 695 F.Supp.2d 1049, 1054-55 (C.D.Cal. 2010).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 14**

1    insufficient to meet Mr. Gallegos' burden of proof of deficits in adaptive

2    functioning prior to age 22.

3          The record does provide some evidence of Mr. Gallegos' history of only

4    completing the ninth or tenth grade, repeating grades, and struggling to obtain his

5    GED, which could support a possible determination that Mr. Gallegos did suffer

6    from deficits in adaptive functioning initially manifest prior to age 22. *See Jones v.*

7    *Colvin*, 149 F. Supp. 3d at 1260–6; *Pedro*, 849 F.Supp.2d at 1011–12. On the other

8    hand, given that Mr. Gallegos never attended special education classes, and

9    considering his lifestyle choices during his youth, including polysubstance use,

10   alcohol use, and gang involvement, it would not be unreasonable to conclude that

11   Mr. Gallegos' poor performance in school was not a reflection of a deficit in

12   adaptive functioning. AR 39, 71, 308, 321, 323-24, 326-27, 332, 338-39, 343, 352,

13   371, 376, 391-94, 396, 398, 401, 418, 420.

14         Here, there are factors that, if taken alone, cut in favor of Mr. Gallegos'

15   argument that he does suffer from a deficit in adaptive functioning manifest before

16   age 22, including the fact that he only completed the ninth or tenth grade, he

17   repeated grades, and he is struggling to obtain his GED. AR 236, 342-43, 373

18   However, the record also contains factors in opposition to Mr. Gallegos'

19   contentions, such as his history of polysubstance use, alcohol use, and gang

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 15**

1    involvement. AR 39, 71, 308, 321, 323-24, 326-27, 332, 338-39, 343, 352, 371,

2    376, 391-94, 396, 398, 401, 418, 420.

3            Importantly, in determining whether substantial evidence exists, we look at

4    the record as a whole, considering both evidence that supports and undermines the

5    ALJ's findings. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).  However, on

6    review, the Court does not retry the case or alter credibility determinations and

7    factual findings; if the evidence is susceptible of more than one rational

8    interpretation, the decision of the ALJ *must* be upheld. *Id*.; *Moncada v. Chater*, 60

9    F.3d 521, 524–25 (9th Cir. 1995) (emphasis added). As such, the Court cannot

10   conclude that a finding in Mr. Gallegos' favor is warranted.

11           **c.  IQ Score Validity.**

12           The second element of the listing at issue is whether or not Mr. Gallegos

13   provided a valid IQ score meeting the requirements of the listing.

14           A finding of intellectual disability under Section 12.05(C) requires "A *valid*

15   verbal, performance, or full IQ of 60 through 70." 20 C.F.R. Pt 404, Subpt. P, App.

16   1, Listing 12.05 (emphasis added). Section 12.00(D) of the Appendix provides that

17   "where more than one IQ is customarily derived from the test administered ... the

18   lowest of these is used in conjunction with listing 12.05." *Williams v. Shalala*, 35

19   F.3d 573 (9th Cir. 1994) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)).

20

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 16**

The Ninth Circuit directs that an ALJ can decide that an IQ score is invalid. *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008). In *Thresher*, the Ninth Circuit stated that the "regulations' inclusion of the word 'valid' in Listing 12.05C makes the ALJ's authority clear." *Id*. Thus, an IQ score may be rejected as an invalid score by an ALJ. However, the Ninth Circuit also noted that it had "never decided what information is appropriately looked to in deciding validity," but that other circuit courts have said that a score can be questioned on the basis of "other evidence," but without explaining "exactly how other evidence impacts the validity of the score itself," and that other courts require "some empirical link between the evidence and the score." *Id*. at 475 n. 6 (citations omitted). "*Thresher* left that issue unresolved, but it suggests, at a minimum, that an ALJ should not find that 'other evidence' renders an IQ invalid without explaining how that evidence impacts the validity of the score." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010).

The Ninth Circuit has provided guidance that is helpful. In the absence of contrary opinion, the opinion of an examining provider (medical providers who examine but do not treat a claimant) may not be rejected unless "clear and convincing" reasons are provided. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). Additionally, a school psychologist is considered an

1   acceptable medical source that can establish medically determinable impairments.

2   20 CFR § 416.913 (a)(2).

3       Here, Mr. Gallegos was administered a WAIS-IV IQ test, through which it

4   was determined that Mr. Gallegos has a full scale IQ of 69. AR 308. Carrie Bishop,

5   a school psychologist who administered the IQ test, stated that Mr. Gallegos

6   "exhibited difficulties with distraction during testing which may have had a

7   minimal effect on his ability to attend to the tasks and thus negatively affected his

8   overall performance." *Id*. Ms. Bishop further opined that Mr. Gallegos' "general

9   cognitive ability is within the extremely low range of intellectual functioning…

10  [h]is overall thinking and reasoning abilities exceed those of only approximately

11  2% of individuals his age," and that there is a 95% confidence interval that his full

12  scale IQ is between 66 and 74, ultimately determining that Mr. Gallegos' full scale

13  IQ score is 69. *Id*.  Importantly, a full scale IQ score of 69 is within the 12.05(C)

14  requirements; and while Ms. Bishop did include the note that Mr. Gallegos'

15  difficulties with distractions may have minimally negative affect on his overall

16  performance, Ms. Bishop does not present any doubt as to the validity of the

17  ultimate score.

18      The ALJ provided three reasons for finding that Mr. Gallegos' full scale IQ

19  score of 69 is not valid: (1) Mr. Gallegos only scored within the listing range on

20  one measure; (2) the examiner noted that Mr. Gallegos had difficulties with

1   distractions which may have had a minimally negative affect on his performance;

2   and (3) because the score is borderline within the listing and has a confidence

3   interval that goes up to 74. AR 22.

4       The Court finds the reasons provided by the ALJ to be insufficient. As noted

5   above, the lowest IQ derived from the test is used in conjunction with listing 12.05.

6   *Williams*, 35 F.3d at 573 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)).

7   In addition, Listing 12.05(C) only requires one score fall within the listing range,

8   not all of the scores.[2] The fact that Mr. Gallegos only had one score within the

9   listing range does not affect the ultimate determination. While the examiner does

10  note the Mr. Gallegos was distracted, she does not question the validity of the

11  overall outcome. Furthermore, there is no contrary medical opinion to that of Ms.

12  Bishop's, thus her determination may not be rejected unless "clear and convincing"

13  reasons are provided. *Lester*, 81 F.3d at 830. The ALJ failed to offer clear and

14  convincing reasons for disregarding Ms. Bishop's examining psychologist's

15  determination of Mr. Gallegos' full scale IQ score.

16      The Court finds the ALJ's determination that there is no valid IQ score is not

17  supported by substantial evidence. *Hill*, 698 F.3d 1144, 1158-59. When an ALJ

18  fails to provide adequate reasons for rejecting a treating or examining doctor's

19

20  [2] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 Listing 12.05(C) requires a "valid verbal, performance, *or* full scale IQ of 60 through 70." (emphasis added).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 19**

1    opinion, that opinion is credited as a matter of law. *Lester*, 81 F.3d at 834 (citations

2    omitted). Thus, the Court concludes that Mr. Gallegos provided a valid full scale

3    IQ score, the court concludes that Mr. Gallegos has satisfied the second element of

4    Listing 12.05(C). However, this error is harmless because, as stated above, Mr.

5    Gallegos failed to satisfy the first element of Listing 12.05(C), a deficit in adaptive

6    functioning that initially manifest prior to age 22.

7    **B. The Rejection of a Portion of Dr. Dougherty's Opinion was in Error.**

8        **a. Legal Standard.**

9        The Ninth Circuit has distinguished between three classes of medical

10   providers in defining the weight to be given to their opinions: (1) treating

11   providers, those who actually treat the claimant; (2) examining providers, those

12   who examine but do not treat the claimant; and (3) non-examining providers, those

13   who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th

14   Cir. 1996) (as amended).

15       A treating provider's opinion is given the most weight, followed by an

16   examining provider, and finally a non-examining provider. *Id*. at 830-31. In the

17   absence of a contrary opinion, a treating or examining provider's opinion may not

18   be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a

19   treating or examining provider's opinion is contradicted, it may only be discounted

20

1    for "specific and legitimate reasons that are supported by substantial evidence in

2    the record." *Id*. at 830-31.

3           The ALJ may meet the specific and legitimate standard by "setting out a

4    detailed and thorough summary of the facts and conflicting clinical evidence,

5    stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

6    F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating

7    provider's opinion on a psychological impairment, the ALJ must offer more than

8    his or her own conclusions and explain why he or she, as opposed to the provider,

9    is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Additionally,

10   the ALJ is the "final arbiter" with regard to medical evidence ambiguities,

11   including differing physicians' opinions. *Tommaetti v. Astrue*, 533 F.3d 1035, 1041

12   (9th Cir. 2008).

13          **b.  Dr. Dougherty.**

14          Dr. Dougherty was an examining doctor. While neither the ALJ nor Mr.

15   Gallegos cite to a contrary opinion, the defendant does, and the Court's review of

16   the record finds two contrary opinions. Dr. Dougherty stated that Mr. Gallegos

17   "[h]as some difficulty getting along with others." AR 344. Non-examining State

18   agency psychologists, Jan L. Lewis, Ph.D. and John D. Gilbert, Ph.D., both direct

19   that Mr. Gallegos has no social interaction limitations. AR 74, 86. Thus, as there

20   does exist contrary opinion, the ALJ was required to provide "specific and

1   legitimate reasons that are supported by substantial evidence in the record" in order

2   to reject Dr. Dougherty's opinion. *Lester*, 81 F.3d at 830-31. This required that the

3   ALJ include "a detailed and thorough summary of the facts and conflicting clinical

4   evidence, stating h[er] interpretation thereof, and making findings." *Magallanes*,

5   881 F.2d at 751. Additionally, the ALJ is required to explain why she is correct as

6   opposed to Dr. Dougherty. *Embrey*, 849 F.2d at 421-22.

7        On December 16, 2010, examining psychologist Dr. Dougherty conducted a

8   psychological evaluation of Plaintiff. AR 336-344. The ALJ afforded "significant

9   weight to the opinion of Dr. Dougherty." AR 24. However, the ALJ stated that she

10  does "not find Dr. Dougherty's statement that the claimant has social difficulties

11  persuasive, given his ability to attend school, play basketball, etc., as mentioned

12  above" (referencing a previous paragraph also recognizing that Mr. Gallegos

13  reported playing basketball every day in 2011 and attending school for his GED).

14  AR 24-25.

15       In order to reject Dr. Dougherty's opinion the ALJ must set out a detailed

16  and thorough summary of the facts and conflicting clinical evidence. Here, the ALJ

17  gave significant weight to the opinion of Dr. Dougherty, but then simply rejected

18  part of Dr. Dougherty's opinion all-together with almost no discussion. AR 24-25.

19  The ALJ does not set out a detailed and thorough summary of the facts, but simply

20  notes two examples of possible social interaction. *Id*. Additionally, the ALJ does

1   not set out a detailed and thorough summary of the conflicting clinical evidence.

2   Indeed, the ALJ does not even cite to, or state, the existence of conflicting medical

3   opinions. Nevertheless, the ALJ previously found (contrary to her rejection of Dr.

4   Dougherty's opinion of claimant's social difficulties) that Mr. Gallegos has mild

5   difficulties in social functioning. AR 21.

6          The ALJ failed to provide specific and legitimate reasons for rejecting part

7   of Dr. Dougherty's opinion and failed to set out a detailed and thorough summary

8   of the facts and conflicting clinical evidence; furthermore, the ALJ did find that

9   Mr. Gallegos does have mild difficulties in social functioning. AR 21. When an

10  ALJ fails to provide adequate reasons for rejecting a treating or examining doctor's

11  opinion, that opinion is credited as a matter of law. *Lester*, 81 F.3d at 834 (citations

12  omitted). Moreover, the ALJ did not account for Mr. Gallegos' mild difficulties in

13  social functioning in her calculation of the residual functional capacity. An ALJ

14  must take into account all limitations and restrictions of a claimant when

15  calculating a residual functional capacity. *Valentine v. Comm'r Soc. Sec. Admin.*,

16  574 F.3d 685, 690 (9th Cir. 2009).  Thus, this error is not harmless because it

17  cannot be considered inconsequential to the determination of disability. *Molina*,

18  674 F.3d at 1115.

19  **C. The ALJ properly discounted Mr. Gallegos' credibility.**

20

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged.  *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, The ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Gallegos alleges; however, the ALJ determined that Mr. Gallegos' statements

1    regarding intensity, persistence, and limiting effects of the symptoms not credible.

2    AR 23.

3    **a.  Mr. Gallegos' daily activities.**

4    The ALJ noted several activities of daily living that are inconsistent with Mr.

5    Gallegos' allegations of the intensity, persistence, and limiting effects of his mental

6    impairments. In particular, the ALJ noted: walking a track, playing basketball,

7    attending school consistently, no difficulty in attending school, household chores,

8    cooking, personal care, and reading for 60 to 90 minutes at a time. AR 24, 342,

9    352, 395. These activities reflect a level of functioning that is inconsistent with Mr.

10   Gallegos' claims of disability.

11   The Court does not find the ALJ erred when assessing Mr. Gallegos'

12   credibility because his activities of daily living are inconsistent with his alleged

13   severity of his impairments.

14   **b.  Inconsistency with the record.**

15   The ALJ asserted that Mr. Gallegos' reports regarding his past

16   polysubstance abuse and alcohol use are inconsistent with the record and cast

17   doubt on the reliability of his statements. For example, Mr. Gallegos testified that

18   he had never done drugs or had problems with alcohol, he was also not

19   forthcoming with his drug use in his examination by Dr. Dougherty; however, the

20   record is replete with Mr. Gallegos' statements of past polysubstance use, alcohol

1  use, having gone to treatment five times for polysubstance abuse, having gone to

2  treatment for alcohol abuse, and his having received two DUIs. AR 24, 308, 323,

3  326-27, 332, 338-39, 343, 352, 371, 376, 391-94, 398, 401, 418, 420.

4       Thus, the ALJ did not err when assessing Mr. Gallegos' credibility because

5  his testimony is inconsistent with the evidence in the record.

6       **c.  Failure to treat.**

7       In consideration of Mr. Gallegos' credibility, the ALJ noted that he has

8  failed to actively pursue treatment. AR 24. A claimant's statements may be less

9  credible when treatment is inconsistent with the level of complaints or a claimant is

10  not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114.

11  When refusing prescribed treatment, the reasons presented for not following the

12  treatment must be related to the mental impairment and not a matter of personal

13  preference. *Id.* "Unexplained, or inadequately explained, failure to seek treatment .

14  . . can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*,

15  885 F.2d 597, 603 (9th Cir. 1989).

16       The ALJ points out that Mr. Gallegos attended two intake evaluations in

17  March and September 2010, but he never actually attended treatment. AR 24. Mr.

18  Gallegos did not obtain the recommended chemical dependency evaluation. *Id*.

19  Numerous missed appointments and cancellations in the record support the ALJ's

20  conclusions. AR 375, 391, 394, 408, 411, 413, 416, 419. Even though Mr.

1    Gallegos had been on medication for a short time and reported doing well, getting

2    out, becoming more active, and sleeping better, he stopped returning to his primary

3    care provider for medication in August 2011. AR 24, 355.

4         The overall record demonstrates that Mr. Gallegos has significant

5    unexplained gaps in treatment and he did not follow the prescribed treatment, thus

6    the ALJ did not err in assessing his credibility.

7    **D. Remedy.**

8         The Court has the discretion to remand the case for additional evidence and

9    findings or to award benefits. *Smolen*, 80 F.3d at 1292.  The Court may award

10   benefits if the record is fully developed and further administrative proceedings

11   would serve no useful purpose. *Id.*  Remand is appropriate when additional

12   administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d

13   759, 763 (9th Cir. 1989).  In this case, the Court finds that further proceedings are

14   necessary for a proper determination to be made.

15        On remand, the ALJ shall credit the opinion of Dr. Dougherty. Once

16   accepting this opinion, the ALJ shall recalculate the residual functional capacity,

17   considering all impairments, and then evaluate, based on this updated residual

18   functional capacity, Mr. Gallegos' ability to perform work available in the national

19   economy.

20

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, in part.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 17,** is **DENIED.**

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

4.  This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 13th day of October, 2016.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND FOR FURTHER PROCEEDINGS~ 28**